## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| William C. Rhodes | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 1:15-cv-03078-JKB |
| Nationstar Mortgage, LLC | * | |
| Defendant. | * | JURY TRIAL DEMANDED |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### FIRST AMENDED COMPLAINT

William C. Rhodes (Mr. Rhodes or Plaintiff) files this action against the Defendant, Nationstar Mortgage LLC. (Nationstar) because Nationstar has annoyed, abused and harassed Mr. Rhodes to pay a debt that Nationstar knows has been discharged and paid. Despite the knowledge that it has no right to claim any amount due from Mr. Rhodes and there is no amount due it, Nationstar has claimed, attempted and threatened to enforce rights with knowledge the rights do not exist.  Further, Nationstar has invaded Mr. Rhodes' privacy by illegally pulling credit information about Mr. Rhodes from one or more consumer reporting agencies without any permissible purpose and by making false representations to one or more consumer reporting agencies that it had a permissible purpose to pull his credit information when in fact no such permissible purpose existed.

## JURISDICTION AND VENUE

1.      This court has federal question jurisdiction over Plaintiff's TCPA, FDCPA, and FCRA claims pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (TCPA); 15 U.S.C. § 1692k(d) (FDCPA); 15 U.S.C. § 1681p (FCRA). The Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

2.      The Court has personal jurisdiction and venue is proper because Defendant regularly conducts business in this District, and a substantial portion of the events complained of occurred here, including Defendant's illegal calls to Plaintiff and other members of the class.

## PARTIES

3.      The plaintiff, Mr. Rhodes, is a citizen and resident of Maryland and is a consumer.

4.      Defendant, Nationstar, is a limited liability company organized under the laws of Delaware with its principal place of business in a state other than Maryland. It is engaged in the business of servicing and holding mortgage loans in the State of Maryland and nationwide.

5.      Nationstar is a billion-dollar corporation with a pattern and practice of wrongful collection behavior, including violations of bankruptcy stays and discharge injunctions. For example:

a.      In 2013, Nationstar admitted that it wrongfully conducted a foreclosure sale of a house in California, even though the homeowners were current under a mortgage modification.[1]

b.      In February, 2014 the New York Times reported a similar case, in which Nationstar failed to honor a mortgage modification agreed with the previous servicer.[2]

c.      In June of 2014, the United States Bankruptcy Court for the Southern District of New York awarded $10,000 in punitive damages against Nationstar and another party for violation of the automatic bankruptcy stay.[3]

d.      In October of 2014, the United States Bankruptcy Court for the Northern District of Ohio found that Nationstar willfully violated a bankruptcy discharge injunction by claiming sums discharged in bankruptcy.[4]

e.      In April, 2015, the United States Bankruptcy Court for the District of Nevada held that Nationstar had violated the bankruptcy discharge injunction and was in contempt of court.  That court entered a judgment against Nationstar

---

[1] Rubadeh Shahbazi, *Foreclosure Nightmare: Family's Home Sold But It Wasn't For Sale,* Sept 12, 2013, http://abc7.com/archive/9246636/.

[2] Jessica Silver-Greenberg & Michael Corkery, *Loan Complaints by Homeowners Rise Once More*, Feb 18, 2014, http://dealbook.nytimes.com/2014/02/18/loan-complaints-by-homeowners-rise-once-more/?_r=0.

[3] *In re* Marjia Salov, Case No. 13-37269-CGM (S.D. N.Y., June 6, 2014) available http://www.nysb.uscourts.gov/sites/default/files/opinions/243424_88_opinion.pdf

[4] *In re* Amber Lynn Luzier, Ch. 13 Case No. 10-40795, (N.D. Ohio, Oct. 3rd, 2014) available https://www.ohnb.uscourts.gov/sites/default/files/opinions/op-20141003-amber-lynn-luzier-attempt-collect-discharged-debt-subsequent-case-proof-claim-violation_0.pdf.

including actual damages, emotional distress damages, punitive damages and
attorneys fees in the total amount of $161,000.[5]

6.      In recent years, regulators have also cited Nationstar for numerous
violations that are harmful to consumers.[6]

7.      The recently available complaints database from the Consumer Financial
Protection Bureau reveals that consumers filed formal complaints against Nationstar
10,591 since the complaints database first opened in 2011.[7]

8.      The most recent consumer complaints in the CFPB database also include
consumer narratives which show that Nationstar's pattern and practice of illegal
collection activity continues. For example, in Complaint ID # 1339386 filed with the
CFPB on April 21, 2015, in a narrative that is strikingly similar to the Plaintiffs' ordeal in

---

[5] *In Re: Randy Mamales Manaois*, Case No. 11-52161-btb, Entered on Docket April 17,
2015.

[6] *See e.g.* Order to Cease and Desist, In the Matter of Nationstar Mortgage LLC, M-11-
0129 (Or. Dept. Consumer & Bus. Serv., Aug. 30, 2012) available
http://www.cbs.state.or.us/dfcs/enf_orders/M-11-0129.pdf (A regulatory examination
of Nationstar revealed numerous violations including "deficiencies in criminal
background checks, unlicensed loan originator activity... and various Truth in Lending
Act disclosure violations.");  Consent Order, In the Matter of Nationstar Mortgage LLC,
Docket No. 2011-010 (Mass. Commissioner of Banks, Nov. 30, 2011) available
http://www.mass.gov/ocabr/banking-and-finance/laws-and-regulations/enforcement-
actions/2011-dob-enforcement-actions/nationstar-consentorder-11302011.html
(Nationstar violated Massachusetts community investment statutes); Agreed Order,
Commonwealth of Kentucky v. Nationstar Mortgage LLC, ICIE No. 288547, (Ky.
Consumer Protection Cabinet, July 15, 2014) available
http://kfi.ky.gov/legal/Mortgage%20Enforcement%20Actions/Nationstar%20Mortgag
e,%20LLC%2014AH0081.pdf?Mobile=1&Source=%2Flegal%2F_layouts%2Fmobile%2F
dispform%2Easpx%3FList%3D5e66e3b9-1422-4a0d-938c-
a918ff2bc3cf%26View%3D4017075d-0d22-4659-a1cd-
e25d7f65b7d6%26ID%3D738%26CurrentPage%3D1 (Nationstar fined for illegally
employing unregistered individuals as loan processors)

[7] CONSUMER FINANCIAL PROTECTION BUREAU, CONSUMER COMPLAINTS DATABASE,
http://www.consumerfinance.gov/complaintdatabase/ (accessed 8/10/2015, filtered by
company name "Nationstar").

the instant case, a Georgia consumer wrote in the "Consumer Complaint Narrative" as follows:

> I filed for bankruptcy and received a discharge in XX/XX/XXXX. I had a second mortgage with XXXX XXXX XXXX, which was listed on the bankruptcy schedules. Nationstar Mortgage has continued collection activities against me attempting to collect the discharged debt. Nationstar Mortgage has recorded this discharged debt on my credit report as late for XX/XX/XXXX, XX/XX/XXXX and XX/XX/XXXX.

In its "Company Public Response" Nationstar allegedly told the CFPB:

> Company believes complaint represents an opportunity for improvement to better serve consumers

9.      Another consumer complained that Nationstar was suing for a mortgage deficiency judgment beyond the applicable statute of limitations and in violation of the law of his state,[8] and a victim of identity fraud complained that Nationstar persists in contacting him about a fraudulent debt.[9]

## FACTUAL ALLEGATIONS RELATING TO
## DEFENDANT'S IMPROPER AND UNLAWFUL ACTS

10.      Together with his wife, Mr. Rhodes owns real property with an address of 39997 Graves Rd., Mechanicsville, Maryland. (the "Property"). In March, 2010 Mr. Rhodes suffered life threatening medical problems. As result of these problems his expenses exceeded his present ability to pay his regular bills and medical costs. At the time of this event, he had a first and second mortgage. The second mortgage is the one

---

[8] *Id.*, complaint ID 1392318.
[9] *Id.,* complaint ID 1316044.

at issue in this case, and it was in the name of Mr. Rhodes only. The second mortgage was then held by Bank of America.

11.    On August 19, 2010 Mr. Rhodes and his wife, Jo Ann, filed for bankruptcy under Chapter 13 of Title 11, the Bankruptcy Code, Case No. 10-29045. Mr. Rhodes sought relief under Chapter 13 of the Bankruptcy Code to adjust his debts. Under Chapter 13, a person makes a payment plan providing monthly payments to a Chapter 13 trustee who in turns makes distributions to the debtors' creditors. Mr. Rhodes paid in $147,159 under his plan.

12.    On November 11, 2010, Bank of America filed a proof of claim in Mr. Rhodes' bankruptcy with a balance due of $57,541.36. (BK ECF 11-1).

13.    On August 13, 2013, Nationstar filed an assignment of the proof of claim from Bank of America to it. (BK ECF 52). Nationstar had actual notice of Mr. Rhodes' bankruptcy and acquired the debt when it was in default.

14.    The Trustee made payments totaling the $57,541.36 to Bank of America/ Nationstar based on the proof of claim filed. (Trustee's Final Report BK ECF 71).

15.    On December 12, 2014, Mr. Rhodes was granted a discharge since he and his wife had fully complied with and completed their Chapter 13 plan. The discharge order was sent by the Bankruptcy Court to his creditors, including Nationstar. (BK ECF 69)

16.    Despite the fact that its claim had been paid in full and he was granted a discharge, Nationstar began making demands for payment from Mr. Rhodes after December 12, 2014, the date of discharge.

17.     In a statement dated January 5, 2015, Nationstar stated that the principal amount due on his "loan" was $17,887.85. This statement was followed by monthly statements thereafter.

18.     Prior to hiring a lawyer, the Plaintiff sent numerous emails with lots of documentation to NationStar, but they ignored him.

19.     Prior to hiring a lawyer, the Plaintiff also spent several hours on the phone trying to explain to Nationstar that he does not owe them any money, but his words fell on deaf ears.

20.     The illegal demands escalated when Nationstar sent Mr. Rhodes a "NOTICE OF FORECLOSURE" in June, 2015.

21.     Nationstar turned up the pressure even more in June, 2015, when Nationstar began robo-calling Mr. Rhodes' cell phone on a daily basis, using an automated telephone dialing system ("ATDS").

22.     The Plaintiff knows that the robo-calls to his cell phone were and are being placed with an autodialier because there is a pause of 3 to 5 seconds before a person comes on the phone and asks for William Rhodes.

23.     The Plaintiff has told Nationstar to stop calling him, but the calls continue. For example, on August 4, 2015, he spent 5 minutes on the phone with NationStar asking them to stop calling because he did not owe them money. The Nationstar representative then told him that these calls were placed automatically from a different part of NationStar, and they simply try to collect past due mortgages once someone answers the call.

24.     The calls have not stopped.

25.     The dates and times of the ATDS robo-calls to the Plaintiff's cell phone include but are not limited to August 3rd, 4th, 8th and 10th, 2015

26.     The Plaintiff has been distraught over the post-bankruptcy demands, repeated phone calls  and threats of foreclosure made by Nationstar. It has affected his daily life in many ways. He has been unable to sleep soundly due to the anxiety the false and wrongful demands and threats by Nationstar. As a proximate result of the Defendant's illegal actions, Mr. Rhodes has suffered both economic and noneconomic damages, injury or loss.  The Plaintiff has suffered other physical manifestations resulting from the emotional distress inflicted by Nationstar. These include nausea, loss of appetite, loss of sleep, insomnia, irritability, social withdrawal, loss of concentration and an inability to enjoy his family and life in peace and solitude.

27.     Mr. Rhodes tried to get Nationstar to stop. Nationstar would not listen. Unable to stop Nationstar through his own requests to be left alone, Rhodes sought legal representation.

28.     Nationstar acted with knowledge of the Bankruptcy.

29.     Nationstar knew that the Plaintiff was granted a discharge by the Bankruptcy court.

30.     Nationstar knew that it did not have the right to foreclose.

31.     Nationstar claimed, attempted or threatened to enforce rights, which it knew did not exist. Further, Nationstar did not have any business purpose in asserting rights that it knew did not exist.

32.     Nationstar communicated with Mr. Rhodes with such frequency, and in a manner that reasonably could be expected to abuse or harass him.

33.     Nationstar used ATDS auto dialers to call Mr. Rhodes on his cellphone without his consent.

34.     Nationstar obtained Mr. Rhodes's credit information from TransUnion without a permissible purpose on June 11, 2015. Nationstar obtained this information well after it had knowledge of Mr. Rhodes's bankruptcy and the discharge of and payment of any debt claimed by Nationstar.

## COUNT I
## VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT AND MARYLAND CONSUMER PROTECTION ACT
## (INDIVIDUAL CLAIM ONLY)

35.     Plaintiff incorporates the allegations in the foregoing paragraphs.

36.     The Defendant's actions violate the prohibitions on abusive and improper debt collection under the Maryland Consumer Debt Collection Act, Md. Code Ann. Comm. Law § 14-201 *et seq*. The Plaintiff is a consumer, the claims involve a consumer credit transaction, the credit was sought for Plaintiff's personal, family or household purposes and the Defendant is a creditor and debt collector.

37.     The Defendant has represented, made a material false representation or implication of the character, extent or amount of debt by claiming that Plaintiff owed any amount for the debt that was discharged.

38.     The Defendant has asserted a legal right that it knows it did not have when it threatened the Plaintiff by sending a NOTICE OF FORECLOSURE.

39.     The Defendants' actions have caused the Plaintiff emotional distress and mental anguish as described above, and have otherwise caused both economic and noneconomic damages to the Plaintiff.

40.    A violation of the MCDCA is a per se violation of the Maryland Consumer Protection Act.

WHEREFORE, the Plaintiff prays for judgment in his favor for the following relief against the Defendant:

a. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000 and the statutory damages allowed by statute;

b.  An award of costs, including reasonable attorney's fees.

c.  Such and other further relief the nature of the Plaintiff's cause may require.

### COUNT II
### VIOLATION OF THE FAIR CREDIT REPORTING ACT ("FCRA")
### (INDIVIDUAL CLAIM ONLY)

41.    The Plaintiff incorporates the allegations in the foregoing paragraphs.

42.    Nationstar obtained private credit information concerning Mr. Rhodes from a consumer reporting agency. Nationstar was a user of information obtained from a consumer reporting agency, TransUnion.

43.    Nationstar did not have a permissible purpose in obtaining the private credit information concerning Mr. Rhodes from any consumer reporting agency.

44.    Nationstar knew that it did not have any permissible purpose to obtain Mr. Rhodes's credit information from a consumer reporting agency.

45.    Nationstar provided false information to obtain information concerning Mr. Rhodes from a consumer reporting agency since it did not have any permissible purpose.  Nationstar did not disclose its impermissible purpose in obtaining the report form the consumer reporting agency.

46.     Nationstar acted willfully when it obtained credit information concerning Mr. Rhodes from a consumer reporting agency.

47.     Nationstar violated the provisions of 15 U.S.C.A. § 1681b and 1691q of the FCRA.

48.     Mr. Rhodes has suffered actual damages arising from Nationstar's invasion of his privacy.

49.     Nationstar is liable for actual, statutory and punitive damages for its willful violation of the FCRA pursuant to 15 U.S.C.A.  1681n.

50.     Nationstar's net worth is over a billion dollars.

WHEREFORE, the Plaintiff prays for judgment in his favor for the following relief against Nationstar on this Count:

a. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000 as well as statutory damages up to $1,000;

b. An award of punitive damages against Nationstar in an amount to be determined at trial;

c. An award of costs, including reasonable attorney's fees.

d. Such and other further relief the nature of the Plaintiff's cause may require.

## COUNT III
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA") (INDIVIDUAL CLAIM ONLY)

51.     The Plaintiff incorporates the allegations in the foregoing paragraphs.

52.     Plaintiff took out a loan for personal, family, or household services, specifically a mortgage loan on his home at the Property.

53.     Plaintiff filed for Chapter 13 Bankruptcy in 2010. Plaintiff was granted a discharge in 2014.  Defendant's claim in his bankruptcy was paid in full.

54.     No reaffirmation agreement was ever exchanged, agreed to or filed with the Bankruptcy Court with respect to the subject mortgage loan.

55.     Pursuant to the Chapter 13 bankruptcy discharge order, Plaintiff was fully released from any and all personal monetary liabilities on the subject loan.

56.     In August, 2013, the debt was transferred or assigned to the Defendant for servicing.     Frequently lenders and mortgage servicers abuse the debtors' vulnerability after the discharge and ignore the bankruptcy code requirements and the discharge injunction by continuing to communicate with the debtor.

57.     Many of these communications clearly asserted that Mr. Rhodes owed a debt based on the mortgage loan, were sent directly to Plaintiff and could not be construed as mere attempts to enforce the mortgage holders *in rem* rights to foreclose since any mortgage had been avoided.

58.     Mr. Rhodes has suffered actual damages as a result of the Defendant's unlawful collection after bankruptcy.

59.     Defendant regularly attempts to collect on debts that are not owed and have been discharged under 11 U.S.C.A. § 727 of the Bankruptcy Code.  As Judge Posner stated:  "Dunning people for their discharged debts would undermine the 'fresh start' rationale of bankruptcy and is prohibited by the [FDCPA] which … prohibits a debt

collector from making a 'false representation of the character, amount, or legal status of any debt.' " In fact, Nationstar has a pattern and practice of such illegal conduct.

60.    The Defendant has no legal right to collect any amount from the Plaintiff.

61.    At all material times herein, Plaintiff's debt were consumer debts as defined by the FDCPA, 15 U.S.C.A. § 1692a(5).

62.    At all material times herein, Plaintiff was a "consumer" as defined by the FDCPA, 15 U.S.C.A. § 1692a(3).

63.    At all material times herein, Defendant was a "debt collector" as defined by the 15 U.S.C.A. § 1692a(6).  Defendant acquired the subject debts while the debts were in default.

64.    At all material times herein, Defendant knew or should have known that the debt it was attempting to collect from the Plaintiff had been discharged and paid.

65.    Each billing letter sent by Defendant is a "communication" as that term is defined by 15 U.S.C. § 1692a(2). Each NOTICE OF FORECLOSURE is a "communication".

66.    By sending billing letters and foreclosure notices to Plaintiff, Defendant attempted to collect a debt and represented that it had a legal right to collect upon discharged monetary amounts.  This conduct violates 15 U.S.C. § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt.

67.     Defendant's above mentioned collection activities falsely represented/represent the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A).

68.     As a direct and proximate result of Defendant's FDCPA violations, Plaintiff has been harmed.  Plaintiff is entitled to actual damages, statutory damages under 15 U.S.C. § 1692k(a)(2)(B) and attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1692k(a)(3).

69.     For the purpose of the claims brought in this action, the applicable standard under the FDCPA is "the least sophisticated" consumer test.

WHEREFORE, the Plaintiff prays for judgment in his favor for the following relief against Nationstar on this Count:

a. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000 as well as statutory damages up to $1,000;

b. An award of costs, including reasonable attorney's fees.

c.  Such and other further relief the nature of the Plaintiff's cause may require\

**COUNT IV**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**
**(INDIVIDUAL CLAIM ONLY)**

*70.*     The Plaintiff incorporates the factual allegations made in the preceding paragraphs.

71.     Nationstar made phone calls to the Plaintiff and others' cell phones through the use of an automatic telephone dialing system, in violation of  47 U.S.C. § 227.

72.     Nationstar's  violations of the Telephone Consumer Protection Act ("TCPA") were willful and/or knowing, and were without the Plaintiff's consent.

73.     The Plaintiff was damaged by defendants' TCPA violations. His privacy was improperly and illegally invaded, and he was forced to deal with these annoying calls. Moreover, the interruption caused by these calls caused Plaintiff to be damaged because they took time and effort to receive and/or retrieve from voice mail.

74.     Nationstar used an automatic telephone dialing system for its own convenience and efficiency, and to the detriment of Plaintiff. This policy improperly shifted the burden of manually dealing with such calls away from Nationstar, and onto the public at large, and in particularly, onto the Plaintiff.

75.     As a result of Nationstar's violations of the TCPA, the Plaintiff is entitled to the statutory damages stated in the TCPA, including treble damages to the extent that such violations were willful and/or knowing. 47 U.S.C. § 227(b)(3).

**COUNT V**
**VIOLATION OF THE MARYLAND TELEPHONE CONSUMER**
**PROTECTION ACT**
**(INDIVIDUAL CLAIM ONLY)**

76.     The Plaintiff incorporates the factual allegations made in the preceding paragraphs.

77.     Nationstar made phone calls to the Plaintiff cell phone through the use of an automatic telephone dialing system, in violation of  47 U.S.C. § 227.

78.     Nationstar's  violations of the TCPA were willful and/or knowing, and were without the Plaintiff's consent.

79.     Pursuant to the Maryland Telephone Consumer Protection Act, a person may not violate the TCPA, and to do so is a violation of Md. Code Ann. CL § 14-3201.

80.     A violation of the TCPA is a violation of the Maryland TCPA.

81.     The Plaintiff was damaged by defendant's MTCPA violations. His privacy was improperly and illegally invaded, and he was forced to deal with these annoying calls. Moreover, the interruption caused by these calls caused Plaintiff to be damaged because they took time and effort to receive and/or retrieve from voice mail.

82.     Nationstar used an automatic telephone dialing system for its own convenience and efficiency, and to the detriment of Plaintiff. This policy improperly shifted the burden of manually dealing with such calls away from Nationstar, and onto the public at large, and in particularly, onto the Plaintiff.

83.     As a result of Nationstar's violations of the MTCPA, the Plaintiff is entitled to the statutory damages stated in the MTCPA, including treble damages to the extent that such violations were willful and/or knowing.

**COUNT VI**
**INVASION OF PRIVACY BY INTRUSION UPON SECLUSION**
**(INDIVIDUAL CLAIM ONLY)**

84.     The Plaintiff incorporates the allegations in the foregoing paragraphs.

85.     By engaging in a campaign of robo-calling the Plaintiff even after the Plaintiff advised Nationstar that the debt had been discharged in bankruptcy, and demanding that Nationstar leave him alone, Nationstar engaged in the intentional intrusion upon the Plaintiff's solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person.

86.     The Plaintiff is a reasonable person, and was highly offended by the campaigns of robo-calling engaged in by Nationstar.

87.     By engaging in a systematic attempt to collect a consumer debt that Nationstar knew had been discharged in bankruptcy, even after the Plaintiff told them that no such debt was due, Nationstar engaged in the intentional intrusion upon the Plaintiff's solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person.

88.     The Plaintiff is a reasonable person, and was highly offended by the systematic attempts by Nationstar to collect on a debt that it knew had been discharged in bankruptcy and paid in full, and even after the Plaintiff had demanded that they cease and desist.

89.     By making repeated collection attempts even after the Plaintiff demanded that Nationstar stop, the Defendant engaged in the intentional intrusion upon the Plaintiff's solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person.

90.     The Plaintiff is a reasonable person, and was highly offended by the acts of Nationstar in continuing to send her letters after she demanded that they cease and desist.

91.     There is clear and convincing evidence that the illegal intrusion upon seclusion was done with actual malice, in the sense of evil or wrongful motive, intent to injure, ill will, or fraud.

WHEREFORE, the Plaintiff prays for judgment in his favor for the following relief against the Defendant:

a. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000;

b. Punitive damages in an amount to be determined by a jury;

c.  An award of costs, including reasonable attorney's fees.

d. An award of statutory damages allowed by the TCPA;

e. An award of statutory damages allowed by the MTCPA;

f.  Such and other further relief the nature of the Plaintiff's cause may require.

Respectfully submitted,

William C.  Rhodes

By his Attorneys,

___/s/_____
Scott C. Borison
Legg Law Firm, LLP
1900 S. Norfolk Rd. Suite 350
San Mateo CA 94403
Borison@legglaw.com
 (301) 620-1016
Fax: (301) 620-1018

MD office:
5235 Westview Dr., Suite 100
Frederick MD 21703

        And

PETER A. HOLLAND
The Holland Law Firm, P.C.
1910 Towne Centre Blvd., Ste. 250
P.O. Box 6268
Annapolis, MD 21401
410 280 6133
410-280-8650 (fax)
peter@hollandlawfirm.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial on all claims.

_/s/_____
Scott C. Borison

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to all parties and counsel of record in this matter when filed with the Court's ECF system.

___/s/_Peter A. Holland_____
PETER A. HOLLAND